NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GREGORY S. HARRIS,        :
                              :    Civil Action No. 10-0791 (RBK)
              Plaintiff,     :
                              :
              v.            :    **OPINION**
                              :
ANN MILGRAM, et al.,       :
                              :
              Defendants.    :

**APPEARANCES:**

Plaintiff pro se
Gregory S. Harris
630 Adriatic Avenue
Atlantic City, NJ 08401

**KUGLER,** District Judge

Plaintiff Gregory Harris, a person previously confined at various New Jersey facilities, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.[1]

Plaintiff alleges various facts regarding his criminal history, going back to 1982, which this Court construes as factual background for the claims alleged herein.

With respect to the allegations which this Court construes as the claims Plaintiff is attempting to assert in this Complaint, Plaintiff alleges that in May 2006, he was transferred to Ann Klein Forensic Center from Atlantic County Jail, that the pending criminal charges against him were dismissed,[2] and that he

---

[1] Plaintiff previously filed a petition for writ of habeas corpus challenging his detention as a pre-trial detainee.  See Harris v. Atlantic County Pros. Office, Civil No. 04-5507 (RBK).  Plaintiff's criminal history to that point is set forth in this Court's Opinion dismissing the prior petition.  See Harris v. Atlantic County Pros. Office, 2006 WL 572824 (D.N.J. March 7, 2006).

This Court will take judicial notice of the docket and decision in this other federal case related to this Complaint.  See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

[2] It is not clear to what charges this allegation refers. The Court notes that when Plaintiff filed his previous petition for writ of habeas corpus, Plaintiff was awaiting trial on a 1989 indictment for aggravated assault and various weapons offenses.

was civilly committed at that time pursuant to New Jersey Court
Rule 4:74-7.  Plaintiff alleges that on December 19, 2006, he was
allowed to be released for 90 days to participate in a partial
care program.  Plaintiff does not allege whether he returned to
the facility or remained released.  Plaintiff alleges that on
December 29, 2007, he drove with his case manager to Atlantic
County Justice Facility to pick up Plaintiff's personal property.
When they arrived at Atlantic County Justice Facility, he was
arrested by Atlantic County Sheriff's officers on a parole
violator warrant, apparently for violation of his parole from a
1982 conviction for manslaughter.  He alleges that he was
"railroaded" back to prison on the 1982 sentence.[3]  Plaintiff
further alleges that he was held beyond the proper end of his
sentence because he was not credited with appropriate good time
and work credits.  He seeks compensatory and punitive damages for
the time spent in prison beyond the end of his sentence.

Plaintiff names as defendants Attorney General Ann Milgran,
Warden Karen Billacki, Classification Supervisor Joyce Princiann,
the New Jersey State Parole Board, NJSPB Chairman Peter J.

---

The New Jersey Department of Corrections Inmate Locator reflects
that he was convicted in 2004 of one count of aggravated
manslaughter and sentenced on July 22, 2004, to a maximum term of
four years and four months' imprisonment, that he came into NJDOC
custody on March 21, 2007, and that he was released on March 10,
2008.

[3] The Court construes this as an allegation that Plaintiff's
parole on the 1982 sentence was revoked.

3

Barnes, Jr., NJSPB Executive Assistant Douglas D. Chiesa, and

Atlantic County Chief Assistant Prosecutor Betsy Phillips.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,

certain in forma pauperis actions that are frivolous, malicious,

fail to state a claim, or seek monetary relief from a defendant

who is immune from such relief.   See 28 U.S.C. § 1915(e)(2) (in

forma pauperis actions).

In determining the sufficiency of a pro se complaint, the

Court must be mindful to construe it liberally in favor of the

plaintiff.   Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).   The Court must

"accept as true all of the allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff."   Morse v. Lower

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis

either in law or in fact."   Neitzke v. Williams, 490 U.S. 319,

325 (1989) (interpreting the predecessor of § 1915(e)(2), the

former § 1915(d)).   The standard for evaluating whether a

complaint is "frivolous" is an objective one.   Deutsch v. United

States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading

requirements of the Federal Rules of Civil Procedure.

4

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and

"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the

6

> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may

7

disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

Persons ... may be joined in one action as defendants
if:
     (A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect
to or arising out of the same transaction, occurrence,
or series of transactions or occurrences; and

8

(B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v.

10

Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

    Plaintiff makes no factual allegations suggesting that
Attorney General Ann Milgram had any personal involvement in any
of the events complained of.  Accordingly, all claims against
Attorney General Ann Milgram will be dismissed with prejudice.

IV.  ANALYSIS

A.   Claims Against New Jersey State Parole Board

    Plaintiff fails to explain in the Complaint what claims he
seeks to assert against the New Jersey State Parole Board.  In
any event, the NJSPB is immune from suit in federal court under
the Eleventh Amendment.

    The Eleventh Amendment to the United States Constitution
provides that, "The Judicial power of the United States shall not
be construed to extend to any suit in law or equity, commenced or

11

prosecuted against one of the United States by citizens of
another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking
to impose a liability which must be paid from public funds in a
state treasury is barred from federal court by the Eleventh
Amendment, unless Eleventh Amendment immunity is waived by the
state itself or by federal statute.  See, e.g., Edelman v.
Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment
protects states and their agencies and departments from suit in
federal court regardless of the type of relief sought.  Pennhurst
State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).
Similarly, absent consent by a state, the Eleventh Amendment bars
federal court suits for money damages against state officers in
their official capacities.  See Kentucky v. Graham, 473 U.S. 159,
169 (1985).  Section 1983 does not override a state's Eleventh
Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require
this Court to dismiss this action if it "seeks monetary relief
from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that
are considered arms of the state for Eleventh Amendment purposes,
nor state officers sued in their official capacities for money
damages are persons within the meaning of § 1983.  Will v.
Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10

(1989); <u>Grabow v. Southern State Correctional Facility</u>, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For the foregoing reasons, all claims against the New Jersey State Parole Board and against Defendants Peter J. Barnes, Jr., and Douglas D. Chiesa, in their official capacities, will be dismissed with prejudice.

B.   <u>Claims against Prosecuting Attorney</u>

Plaintiff names as a defendant Betsy Phillips, Chief Assistant Prosecutor of Atlantic County, New Jersey.  Plaintiff alleges that Defendant Phillips participated in his extradition in 2004.[4]  It is not clear whether he seeks to assert claims against Defendant Phillips with respect to the revocation of his parole.

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  <u>Burns v. Reed</u>, 500 U.S. 478, 492 (1991).  Similarly, "acts undertaken by a prosecutor in preparing for the

---

[4] Because of the disposition of this claim, this Court need not consider whether any challenge to the extradition procedure is time-barred.

initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

With respect to post-conviction proceedings, the Third Circuit has held that "'absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings ... where the prosecutor is personally involved ... and continues his role as an advocate.'" Yarris v. County of Del., 465 F.3d 129, 137 (3d Cir. 2006); Bierley v. Dombrowski, 309 Fed.Appx. 594 (3d Cir. 2009) (prosecuting attorneys entitled to absolute immunity for activities in connection with parole revocation); see also Byrd v. Parris, No. Civ. A. 99-769, 1999 WL 895647, at *4 (E.D.Pa. Oct. 15, 1999) (finding that prosecutors were entitled to absolute immunity for conduct during appeal); Parkinson v. Cozzolino, 238 F.3d 145, 151 (2d Cir. 2001) (noting that there is "no meaningful distinction between the role of a prosecutor in obtaining a conviction and the role of a prosecutor in striving to uphold that conviction on appeal or to obtain a new conviction upon re-trial"); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994) (holding that prosecutor who was functioning as an advocate for the state in post-conviction proceedings was absolutely immune from Section 1983 liability).

14

Plaintiff has alleged no facts that would suggest that Defendant Betsy Phillips undertook any activities other than in her role as an advocate for the state in judicial proceedings. Accordingly, she is immune from suit, and all claims against her will be dismissed with prejudice.

C.   <u>Claim of False Arrest</u>

Plaintiff alleges that he was arrested on December 29, 2007, "on a old so-called warrant I never seen."  The Court construes this as a claim that he was falsely arrested on December 29, 2007.

It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  <u>See</u> <u>Walmsley v. Philadelphia</u>, 872 F.2d 546 (3d Cir. 1989)(citing cases); <u>see</u> <u>also</u>, <u>Albright v. Oliver</u>, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  <u>Ramirez v. United States</u>, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting <u>Fleming v. United Postal Service, Inc.</u>, 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause.

15

<u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  <u>Lind v. Schmid</u>, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."  <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975) (<u>quoting</u> <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964)); <u>Sharrar v. Felsing</u>, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995); <u>Palma v. Atlantic County</u>, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing <u>Groman</u>).  <u>See</u> <u>also</u> <u>Anela v. City of Wildwood</u>, 595 F. Supp. 511, 512 (D.N.J. 1984)(holding a person for any length of time without legal justification may be a violation of the right to liberty

under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[5]

Here, howevr, Plaintiff has failed to allege facts describing who arrested him.  Accordingly, he has failed to state a claim for false arrest, and the claim will be dismissed.  In addition, the facts suggest that the claim may be time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Jones v. Bock, 549 U.S. 199, 215 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). See also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding,

---

[5] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 244 Fed.Appx. 455, 2007 WL 1771315 (3d Cir. 2007) ("district court may sua sponte dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing Jones v. Bock, Pino v. Ryan) (not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (applying Pino to current § 1915(e)). The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

   "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007) (emphasis in original).

A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

19

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity).  New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.  See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

20

> (1) where a defendant actively misleads a plaintiff
> with respect to her cause of action; (2) where the
> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

Id. n.9.

Here, according to the allegations of his Complaint, Plaintiff's false arrest claims accrued as soon as he was arrested, and the limitations period began to run as soon as he was held pursuant to legal process.  See Wallace v. Kato, 549 U.S. 384, 396 (2007).

Plaintiff alleges that he was arrested on December 29, 2007, but he fails to allege facts that would permit this Court to determine when the limitations period began to run, that is, when he was held pursuant to legal process.  The Complaint was received in this Court on February 17, 2010, more than two years after he was arrested.[6]  Although Plaintiff may amend the Complaint to correct the deficiencies noted herein, that he has failed to allege facts suggesting that any of the named defendants participated in his arrest, any such amendment will be subject to the relation-back rules of Rule 15 of the Federal Rules of Civil Procedure.  Accordingly, should Plaintiff seek to

---

[6] Because Plaintiff is not confined, he cannot claim the benefit of the "mailbox rule" applicable to filings by confined persons, deeming documents filed when they are placed in the prison mail system.  See Houston v. Lack, 487 U.S. 266 (1988). Accordingly, Plaintiff's complaint is deemed filed when it was received in the Clerk's Office.

21

amend the Complaint to re-assert this claim, he will be required to plead facts sufficient to demonstrate that this claim is not time-barred as of the time the amended complaint is filed.

D.   Challenge to Parole Revocation Procedures/Decision

Plaintiff alleges facts that, liberally construed, suggest that he is challenging the revocation of his parole.  Any such claim must be dismissed without prejudice as premature.

In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C.§ 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

22

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in <u>Preiser</u>, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding.  Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the

23

plaintiff, the action should be allowed to proceed, in
the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  Id. at 489-90.

More recently, in Edwards v. Balisok, 510 U.S. 641 (1997),

the Supreme Court applied the lessons of Preiser and Heck to a

state prisoner action, seeking compensatory and punitive damages,

challenging the constitutionality of procedures used in a prison

disciplinary proceeding that resulted in the loss of good-time

credits, but not necessarily challenging the result and not

seeking the restoration of the good-time credits.  Again, the

Court emphasized that such a claim is not cognizable under § 1983

if a favorable outcome would necessarily imply the invalidity of

the challenged judgment, there the disciplinary finding and

punishment.  520 U.S. at 646-8.

In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme

Court summarized the evolution of its jurisprudence thus:

> Throughout the legal journey from Preiser to
> Balisok, the Court has focused on the need to ensure
> that state prisoners use only habeas corpus (or similar
> state) remedies when they seek to invalidate the
> duration of their confinement - either directly through
> an injunction compelling speedier release or indirectly
> through a judicial determination that necessarily
> implies the unlawfulness of the State's custody. ...
> These cases, taken together, indicate that a state
> prisoner's § 1983 action is barred (absent prior
> invalidation) - no matter the relief sought (damages or

24

> equitable relief), no matter the target of the
> prisoner's suit (state conduct leading to conviction or
> internal prison proceedings) – <u>if</u> success in that
> action would necessarily demonstrate the invalidity of
> confinement or its duration.

<u>Wilkinson</u>, 544 U.S. at 81-82 (emphasis in original).

Here, Plaintiff apparently seeks to bring a claim for damages arising out of an allegedly wrongful revocation of his parole.  The claim is deficient in two particulars.

First, Plaintiff fails to meet the Rule 8 pleading requirement in that he fails to describe the alleged constitutional deficiencies or to identify the individual defendants who allegedly deprived him of his constitutional rights.

In addition, although Plaintiff is no longer confined, his claim that his parole was revoked in violation of his constitutional rights is precisely the type of claim for damages barred by the <u>Preiser</u>/<u>Heck</u>/<u>Balisok</u> line of cases.  A determination that he was deprived of liberty without due process would necessarily imply the invalidity of the parole revocation. The fact that he is no longer confined, and that he no longer has the ability to challenge the revocation via a habeas proceeding, does not affect the applicability of the <u>Heck</u> bar.  <u>See</u> <u>Giles v. Davis</u>, 427 F.3d 197, 209-10 (3d Cir. 2005); <u>Fuchs v. Mercer County</u>, 260 Fed.Appx. 472 (3d Cir. 2008); <u>Drayer v. Delaware</u>, 173 Fed.Appx. 997 (3d Cir. 2006).

As Plaintiff has failed to allege a favorable termination of the parole revocation, the claim is premature until such time as the parole revocation decision has been otherwise invalidated. The claim challenging the parole revocation must be dismissed without prejudice for failure to state a claim.

E.   Claim of Detention Beyond End of Sentence

Plaintiff alleges a constitutional violation based upon confinement beyond the end of his term of incarceration.  He alleges that he told Defendants Karen Billaki, Joyce Princiann, Peter J. Barnes, Jr., and Douglas D. Chiesa, of the problem, but that they refused to investigate his claims.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).

The Court of Appeals for the Third Circuit has held that imprisonment "beyond one's term" may give rise to a claim for "cruel and unusual punishment" under the Eighth Amendment.  See Sample v. Diecks, 885 F.2d 1099, 1107-12 (3d Cir. 1989).  The Court first held that there could be "no doubt" that imprisonment "beyond one's term" constitutes punishment within the meaning of

26

the Eighth Amendment.  885 F.2d at 1108 (citing <u>Hutto v. Finney</u>,
437 U.S. 678, 685 (1978) and <u>Haygood v. Younger</u>, 769 F.2d 1350,
1354 (9th Cir. 1985), <u>cert. denied</u>, 478 U.S. 1020 (1986)).  The
Court then proceeded to evaluate the circumstances under which
incarceration beyond one's term constitutes "cruel and unusual"
punishment.

> One class of "unnecessary and wanton" wrongs, and the
> one most relevant here, is those wrongs "'totally
> without penological justification.'"
>
> ...
>
> A harm could be thought of as penologically
> justified in another sense, however.  The
> administration of a system of punishment entails an
> unavoidable risk of error.  In the case of punishment
> through imprisonment, those errors may result in harms
> to inmates.  Elimination of the risk of error in many
> instances would be either literally impossible or
> unfeasible because prohibitively costly.  Thus
> unforeseeable accidents or inadvertent mistakes are a
> necessary cost of any prison system; they therefore are
> not "repugnant to the conscience of mankind," and do
> not violate the eighth amendment.
>
> The degree to which a harm is "unnecessary" in the
> sense of being unjustified by the exigencies of prison
> administration will affect the state-of-mind
> requirement a plaintiff must meet to demonstrate that a
> particular prison official violated the eighth
> amendment.  ...
>
> ... Accordingly, we hold that there can be no
> eighth amendment liability in this context in the
> absence of a showing of deliberate indifference on the
> part of the defendant to whether the plaintiff suffers
> an unjustified deprivation of his liberty.  ...
>
> To establish § 1983 liability in this context, a
> plaintiff must first demonstrate that a prison official
> had knowledge of the prisoner's problem and thus of the
> risk that unwarranted punishment was being, or would

be, inflicted.  Second, the plaintiff must show that
the official either failed to act or took only
ineffectual action under the circumstances indicating
that his or her response to the problem was a product
of deliberate indifference to the prisoner's plight.
Finally, the plaintiff must demonstrate a causal
connection between the official's response to the
problem and the infliction of the unjustified
detention.

Among the circumstances relevant to a
determination of whether the requisite attitude was
present are the scope of the official's duties and the
role he or she has played in the everyday life of the
prison.  Obviously, not every official who is aware of
a problem exhibits indifference by failing to resolve
it.  A warden, for example, although he may have
ultimate responsibility for seeing that prisoners are
released when their sentences are served, does not
exhibit deliberate indifference by failing to address a
sentence calculation problem brought to his attention
when there are procedures in place calling for others
to pursue the matter.  On the other hand, if a prison
official knows that, given his or her job description
or the role he or she has assumed in the administration
of the prison, a sentence calculation problem will not
likely be resolved unless he or she addresses it or
refers it to others, it is far more likely that the
requisite attitude will be present.

Sample, 885 F.2d at 1108-10 (citations omitted).

The Court of Appeals for the Third Circuit has also held

that detention beyond one's term may give rise to a claim for

deprivation of liberty without due process under the Fourteenth

Amendment if "a policymaking official establishes a

constitutionally inadequate state procedure for depriving people

of a protected interest and someone is thereafter deprived of

such an interest."  Sample, 885 F.2d at 1114.  Applying the

balancing test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976)

to determine what process is due a prisoner facing detention beyond his term, the Court held, "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision." Sample, 885 F.2d at 1115. See also Haygood v. Younger, 769 F.2d at 1356 ("due process in this case required the state to provide Haygood with a meaningful hearing at a meaningful time").

Here, Plaintiff alleges that he told Defendants Karen Billaki, Joyce Princiann, Peter J. Barnes, Jr., and Douglas D. Chiesa, of the problem, but that they refused to investigate his claims. This claim is sufficient to survive dismissal at this screening stage.

F.    Request for Appointment of Counsel

Plaintiff requests appointment of counsel on the grounds that he does not have resources to pay counsel and that the litigation is "complex."

Indigent persons raising civil rights claims have no absolute constitutional right to counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must
> have some merit in fact and law. ... If the district
> court determines that the plaintiff's claim has some

29

merit, then the district court should consider the
following factors:

> (1) the plaintiff's ability to present his or her
> own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will
> be necessary and the ability of the plaintiff to pursue
> such investigation;
> (4) the amount a case is likely to turn on
> credibility determinations;
> (5) whether the case will require the testimony of
> expert witnesses;
> (6) whether the plaintiff can attain and afford
> counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir.
> 1993), cert. denied, 510 U.S. 1196 (1994).]  This list
> of factors is not exhaustive, but instead should serve
> as a guide post for the district courts.
>
> Correspondingly, courts should exercise care in
> appointing counsel because volunteer lawyer time is a
> precious commodity and should not be wasted on
> frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

In considering the first factor, courts should consider "the
plaintiff's education, literacy, prior work experience, and prior
litigation experience."  Tabron, 6 F.3d at 156.  In addition,
courts should consider whether the plaintiff has access to
resources such as a typewriter, photocopier, telephone, and
computer.  Id.

"Where the legal issues are complex, it will probably serve
everyone involved if counsel is appointed."  Parham, 126 F.3d at
459 (citing Tabron, 6 F.3d at 156 and Maclin v. Freake, 650 F.2d
885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not

clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")).

In considering the ability of a plaintiff to investigate the facts, courts "should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules." Parham, 126 F.3d at 460.

In considering the credibility factor, "courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460.

The necessity of an expert witness "weighs heavily in favor of appointment of counsel." Parham, 126 F.3d at 460. Finally, where other factors weigh in favor of appointment of counsel, evidence that a plaintiff has made extensive unsuccessful efforts to obtain counsel weighs heavily in favor of appointment. Parham, 126 F.3d at 461.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time. As a preliminary matter, Plaintiff has presented only one claim sufficient to avoid dismissal. He has not advised the Court of his education level. In addition, although Plaintiff alleges that he previously was civilly committed, he does not explain the basis for that commitment or the present state of his mental health.

As the sole remaining claim concerns the calculation of Plaintiff's sentence after the revocation of his parole, it does not at present seem that there will be any need for extensive discovery or expert witnesses.

For all the foregoing reasons, the request for appointment of counsel will be denied, without prejudice to the Court or Plaintiff revisiting the request if circumstances warrant.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Eighth Amendment claim for confinement beyond the end of Plaintiff's term of imprisonment may proceed.  All other claims will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim for violation of false arrest, the Court will grant Plaintiff leave to file an amended complaint.[7]

---

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>

An appropriate order follows.

s/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: March 2, 2010