<u>**NOT FOR PUBLICATION**</u>　　　　　　　　　　　　　　　　　　　　　　　　(Doc. No. 31)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| GREGORY S. HARRIS, : | |
| : | |
| Plaintiff, : | Civil No. 10-791 (RBK/AMD) |
| : | |
| v. : | **OPINION** |
| : | |
| ANN MILGRAM, et al., : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

　　　This matter arises out of the allegedly unlawful detention of Plaintiff Gregory S. Harris beyond his term of incarceration. Presently before the Court is the motion for summary judgment filed by Defendants Karen Balicki, Joyce Princianni, and Douglas Chiesa pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is **GRANTED**.

**I.　BACKGROUND**

　　Plaintiff was formerly incarcerated in both Pennsylvania and then New Jersey between 1981 and 2008. During the twenty-seven-year period Plaintiff spent in the criminal justice system, he served various terms of imprisonment for violent criminal offenses and parole violations. Plaintiff claims that certain New Jersey officials violated his civil rights by detaining him beyond the expiration of his New Jersey prison sentence. The following is a chronology of his incarceration and parole history.

　　On November 20, 1981, Plaintiff was sentenced to 12 ½ to 25 years of incarceration as a result of his conviction for armed robbery, conspiracy, assault, and a weapons violation in

1

Pennsylvania ("the Pennsylvania Sentence").  (Chiesa Decl. Ex. E).  On August 13, 1982, Plaintiff was sentenced to a fifteen-year term of incarceration for aggravated manslaughter in New Jersey ("the New Jersey Sentence").  (Chiesa Decl. Ex. A).  The New Jersey Sentence ran concurrent with the Pennsylvania Sentence.  (Chiesa Decl. Ex. D).  After Plaintiff served five years of the Pennsylvania Sentence, Plaintiff was paroled, and transferred to the New Jersey Department of Corrections.  (Chiesa Decl. Ex. D).

On September 13, 1988, Plaintiff was paroled on his New Jersey sentence.  (Chiesa Decl. Ex. B).  On February 8, 1989, the Parole Board issued Plaintiff a parole violation warrant because he failed to report to his parole officer.  (Chiesa Decl. Ex. G).  On April 11, 1989, Plaintiff was arrested again in Pennsylvania, and subsequently entered a guilty plea to charges of criminal conspiracy and robbery.  As a result of those charges, Plaintiff was sentenced to a three-to-ten year term of incarceration that ran concurrently with his parole violation term ("the Second Pennsylvania Sentence").[1]  (Chiesa Decl. Ex. E, G).  One month later, on May 23, 1989, Plaintiff was indicted in Atlantic County, New Jersey for Robbery, unlawful possession of a weapon, possession of a weapon for unlawful purposes, aggravated assault, and conspiracy ("the Atlantic County Indictment").  (Chiesa Decl. Ex. C).

The Second Pennsylvania Sentence expired on April 11, 2004.  (Chiesa Decl. Ex. G Sentence Status Summary).  On July 22, 2004, Plaintiff was taken into custody in New Jersey pending trial for the Atlantic County Indictment.  Harris v. Atl. Cnty. Pros. Office, No. 04-5507, 2006 WL 572824, at *1 (D.N.J. Mar. 07, 2006).  Plaintiff was extradited to New Jersey on the indictment detainer, not the parole violation warrant, which was lost.  Id.  The New Jersey Parole Board issued a replacement warrant on August 17, 2004.  Id.

---

[1] Plaintiff's Pennsylvania parole violation term expired on July 25, 1995.  On that date, Plaintiff began serving the three to ten year term, which expired on April 11, 2004.  (Chiesa Decl. Exs. D, E, G).

2

On October 5, 2004, the New Jersey Parole Board scheduled a parole hearing for October 8, 2004. (Id.). However, that hearing was postponed until March 17, 2004, because Plaintiff requested counsel, Plaintiff's counsel withdrew due to a conflict, new counsel was appointed, and because Plaintiff repeatedly requested to postpone the hearing until the Atlantic County Indictment was adjudicated. (Id.). On March 10, 2006, the Atlantic County Indictment was dismissed after a state court judge determined that Plaintiff was not competent to stand trial. (Chiesa Decl. Ex. F).

A year later, on March 21, 2007, Plaintiff had a final revocation hearing before a New Jersey Parole Board hearing officer, who sustained the revocation based upon Plaintiff's Pennsylvania conviction on the 1989 charges. (Chiesa Decl. Ex. G). One week later, a Parole Board Panel upheld the hearing officer's decision, revoked Plaintiff's parole and ordered Plaintiff to serve a forty-eight month future eligibility term. (Chiesa Decl. Ex. G). Plaintiff administratively appealed the decision of the Parole Board Panel. The full Parole Board affirmed the March 28, 2007 decision to revoke Plaintiff's parole. (Chiesa Decl. Ex. H, I). During that appeal, Plaintiff argued that the Parole Board improperly failed to award him commutation and work credits for the time he was incarcerated in Pennsylvania between August 1982 and January 1987. (Chiesa Decl. H). In response to that contention, the full Parole Board determined that whether Plaintiff was entitled to an award of commutation and work credits "is . . . a matter for the Department of Corrections[,] not the State Parole Board." (Id.). The Parole Board then advised Plaintiff to contact the Department of Corrections to resolve the matter.

Plaintiff was incarcerated in South Woods State Prison ("SWSP") between 2007 and 2008. During that period, he prepared five Administrative Remedy Forms ("Remedy Forms"), asserting that he should receive work and commutation credits for the time he spent incarcerated

3

in Pennsylvania between August 13, 1982 and January 15, 1987.[2]  (See Am. Compl. at 5).  An SWSP official named "C. Roberts" generated the following response to the Remedy Form Plaintiff submitted on May 21, 2001:

> [W]ork credits applied as follows:  7-22-04 to 10-6-05    88.4
> 10-7-05 to 12-20-05   10.6
> 12-21-05 to 5-5-06    27.2
> 5-6-06 to 12-28-06    33.8
> 12-29-06 to 4-11-07   20.8

(See Compl. Exs.).  In response to the Remedy Form Plaintiff submitted on July 5, 2007, an SWSP official named "B. Steward" stated:  "credits while serving an out of state sentence does not apply to your New Jersey sentence."  (Id.).  Balicki signed the responses to the Remedy Forms Plaintiff submitted on May 21, 2007 and July 5, 2007.

Plaintiff's New Jersey sentence expired on March 10, 2008 and he was released from custody.  (Porto Decl. Ex. A).

Plaintiff filed the Complaint on February 17, 2010.  On May 6, 2010, Plaintiff filed an amended complaint.  The Amended Complaint alleges that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by detaining him beyond his appropriate term of incarceration.  Specifically, the Amended Complaint alleges "Plaintiff's constitutional rights under the Eight[h] Amendment were violated when New Jersey Department of Correction[s] refused to allow prisoner[']s earn[ed] work credits and good time credits under N.J.S.A. 30:4-92 . . . ." (Am. Compl. at 2) (errors in original).  With respect to Plaintiff's Fourteenth Amendment claim, the Amended Complaint alleges "[t]he removal of good time credits from an inmate implicates a protected liberty interest."  (Am. Compl. at 5).  Inmates subjected to that penalty have a right to due process protection."  (Am. Compl. at 7).  Defendants filed a motion for

---

[2] Plaintiff submitted Remedy Forms on May 21, 2007, June 16, 2007, July 5, 2007, January 25, 2008, and February 19, 2008.  (See Am. Compl. Exs. Pl.'s Remedy Form May 21, 2007, June 16, 2006, July 5, 2007, January 25, 2008, February 19, 2008).

summary judgment on February 18, 2011.  In that motion, Defendants argue that summary judgment is appropriate because:  (1) Chiesa, a Parole Board employee, did not calculate Plaintiff's work or commutation credits, or otherwise determine the duration of Plaintiff's maximum sentence; (2) Plaintiff failed to prove that Princianni "had knowledge of, or was personally involved in, any decision regarding his sentence calculation"; and (3) Balicki, the Administrator of SWSP, "cannot be deemed deliberately indifferent because there were procedures in place which called for others to investigate and address the [sentence] calculation issue."  (Defs.' Br. at 1-2).  In addition, Defendants argue that they are entitled to qualified immunity.  Defendants did not argue that they are entitled to summary judgment as to Plaintiff's Fourteenth Amendment due process claim.  Plaintiff did not oppose Defendants' motion for summary judgment.

## II.     STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmoving party may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. Whether Defendant Chiesa Was Deliberately Indifferent to Plaintiff's Allegedly Unlawful Detention

Imprisonment beyond one's term of incarceration may "constitute cruel and unusual

punishment within the meaning of the Eighth Amendment."[3]  See Granberry v. Chairman of Pennsylvania Bd. of Probation and Parole, 396 F. App'x 877, 880 (3d Cir. 2010) (citing Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993)).  In order to prove an Eighth Amendment violation, however, the prisoner "must show that the defendants acted with deliberate indifference."  Id.  "To act with deliberate indifference is to recklessly disregard a substantial risk of serious harm."  Id.  Moreover, "[b]ecause the standard is recklessness, 'prison officials who actually knew of a substantial risk to a prisoner's protected right may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

Here, because no reasonable jury could conclude that Defendant Chiesa, an employee of the New Jersey State Parole Board, was deliberately indifferent to Plaintiff's allegedly unlawful incarceration, Chiesa is entitled to summary judgment.  Plaintiff attributes his extended incarceration to Defendants' failure to apply commutation credits and work credits toward his New Jersey sentence.  However, in New Jersey, the calculation of an inmate's maximum sentence is the responsibility of the Department of Corrections, not the Parole Board.  The Department of Corrections "is entrusted with the legal authority, among other things, 'to provide for the custody, care, discipline, training and treatment of adult offenders committed to State correctional institutions or on parole[.]'"  Ries v. Dep't of Corrections, 933 A.2d 638, 640  (N.J. Super. Ct. App. Div. 2007) (quoting N.J. Stat. Ann. § 30:1B-3).  "That responsibility necessarily includes award and calculation of commutation credits, work credits and the date on which an

---

[3] The Third Circuit has also held that detention beyond one's term may give rise to a claim for deprivation of liberty without due process under the Fourteenth Amendment if "a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such and interest."  Sample, 885 F.2d at 1114.  Applying the balancing test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), to determine what process is due a prisoner facing detention beyond his term, the Court held, "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision."  Sample, 885 F.2d at 1115.

inmate must be discharged because the inmate's sentence has been fully served." Fedd v. New Jersey Dep't of Corrections, 2008 WL 2875380, at *2 (N.J. Super. Ct. App. Div. 2008) (citing N.J. Stat. Ann. 30:4-140; N.J. Stat. Ann. 30:4-92). Here, Chiesa is a member of the Parole Board, not the Department of Corrections. Because Chiesa is not an employee of the Department of Corrections, he is not responsible for any deprivation of liberty caused by the allegedly improper calculation of Plaintiff's maximum term of incarceration. Accordingly, Chiesa is entitled to summary judgment as to Plaintiff's Eighth and Fourteenth Amendment claims. See Fedd, 2008 WL 2875380, at *2 (noting that the Department of Corrections is responsible for calculating an inmate's maximum sentence, and rejecting plaintiff's argument that New Jersey State Parole Board determines an inmate's maximum sentence).[4]

### B. Whether Defendants Balicki and Princianni Were Deliberately Indifferent to Plaintiff's Allegedly Unlawful Detention

Plaintiff also claims that Balicki, the Administrator of South Woods State Prison, and Defendant Princianni, an employee of South Woods State Prison, are responsible for his allegedly unlawful detention. For the following reasons, both Balicki and Princianni are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

To establish § 1983 liability for detention beyond one's term of incarceration, a plaintiff must demonstrate: (1) "that [the] prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted"; (2) "the official

---

[4] Even if the Parole Board shared responsibility for calculating an inmate's maximum sentence, Chiesa is entitled to summary judgment on Plaintiff's Eighth Amendment claim. With respect to work credits, Defendants correctly note that "[Plaintiff] did not submit any documentation to substantiate his claim that he actually performed work during the relevant time period." (Defs.' Br. at 13). Because Plaintiff failed to submit any documentation in support of his claim for work credit, there is no material issue of fact for trial on the issue of Plaintiff's claim to work credit.

Plaintiff also fails to create a material issue of fact concerning commutation credits. The Remedy Form Plaintiff submitted on June 16, 2007, claimed that the Department of Corrections "took" 348 days of his commutation credits. However, the response to that Remedy Form, generated by "B. Steward," reveals that Plaintiff received 1,632 commutation credits towards his New Jersey Sentence. Plaintiff fails to offer any evidence in support of his assertion that he is entitled to more than 1,632 commutation credits. Accordingly, Plaintiff failed to satisfy his burden on summary judgment.

8

either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's right"; and (3) "a causal connection between the official's response to the problem and the infliction of the unjustified detention." Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989). "[T]he scope of a prison official's duties and the role [that] he or she has played in the everyday life of the prison" is critical to the court's determination as to whether the defendant is liable for the plaintiff's allegedly unlawful detention. Id. As the Third Circuit explained in Sample v. Diecks,

> A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference for failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter. On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present.

Id. (emphasis added).

Here, Balicki is entitled to summary judgment because no reasonable jury could conclude that she was deliberately indifferent to Plaintiff's unlawful detention. Plaintiff attached five Request System and Remedy Forms ("Remedy Forms") to the Amended Complaint. In those forms, Plaintiff asserts that he should have received commutation and work credit for the time he served in Pennsylvania between August 1982 and August 1987. (See Am. Compl. Exs. Pl.'s Remedy Form May 21, 2007, June 16, 2006, July 5, 2007, January 25, 2008, February 19, 2008). Thereafter, Plaintiff received response forms from SWSP employees. Balicki signed the response forms pertaining to the Remedy Forms Plaintiff submitted on May 21, 2007 and July 5, 2007. (See Am. Compl. Ex. Pl.'s Remedy Form May 21, 2007; July 5, 2007). A prison official

9

named "C. Roberts" generated the response to the Remedy Form Plaintiff submitted on May 21, 2007. A prison official named "B. Steward" generated the response to the Remedy Form Plaintiff submitted on July 5, 2007. Each of those responses address Plaintiff's contention that he was improperly denied work and commutation credits. Thus, there was a procedure in place at SWSP to ensure that a corrections employee correctly calculated the work and commutation credits earned by each inmate and submitted the calculation to Balicki for approval. Plaintiff puts forward no evidence that Balicki had any role in calculating his work credits or communication credits, or otherwise had a basis for believing that the responses submitted by "B. Steward" and "C. Roberts" were incorrect. Therefore, because Plaintiff failed to meet his burden of offering evidence upon which a reasonable jury could conclude that Defendant Balicki was deliberately indifferent to his unlawful detention, Defendant Balicki is entitled to summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claim.[5]

Princianni is also entitled to summary judgment as to Plaintiff's deliberate indifference claim. It is well-settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs[;] liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence." Id.

Here, Defendants argue that Princianni cannot be liable for Plaintiff's allegedly unlawful detention because Princianni had no personal involvement in responding to Plaintiff's

---

[5] The Court also notes that Defendant Balicki cannot be liable by virtue of her official position as warden of SWSP because it is well-settled that Section 1983 does not create a cause of action against local government supervisors solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrong[;] liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence.") (internal citations omitted).

complaints. (Defs.' Br. at 13). In support of that argument, Defendants point to the response forms attached to the Complaint which demonstrate that an individual named "B. Steward" and "C. Roberts" responded to Plaintiff's Administrative Remedy Forms. (Defs.' Br. at 13). Plaintiff fails to offer any evidence that Princianni calculated his commutation and work credits or otherwise contributed to the response to his Remedy Form. In addition, Plaintiff puts forth no evidence that Princianni knew that any SWSP employee improperly calculated Plaintiff's commutation and work credits. Moreover, as Defendants correctly note in their brief, "[o]ther than his own statements . . . [Plaintiff] did not submit any documentation to substantiate his claim that he actually performed work during the relevant time period." (Defs.' Br. at 13). Therefore, because Plaintiff failed to put forward any evidence that Defendant Princianni had any personal involvement in the calculation of his work credits, or that he actually performed work between 1982 and 1987 while he was incarcerated in Pennsylvania, Plaintiff's Eighth Amendment claim against Princianni is dismissed.

### C. Whether Defendants Balicki and Princianni Are Entitled to Qualified Immunity

Defendants argue that they are entitled to qualified immunity. Defendants contends that "because there was no clearly established federal law regarding an inmate's right to receive work credits towards his sentence while serving that sentence in another State, and because Harris cannot show that any of the defendants were deliberately indifferent towards his liberty interest, defendants are entitled to qualified immunity." (Defs.' Br. at 17).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Third Circuit uses a two-

11

step inquiry to determine whether a government official is entitled to qualified immunity in connection with the arrest of a private citizen. Pollock v. The City of Phila., No. 10-2041, 2010 WL 5078003, at *4 (3d Cir. Dec. 14, 2010) (citing Pearson v. Callahan, 555 U.S. 223 (2009)). First, a court must "decide whether the facts . . . shown . . . make out a violation of a constitutional right." Id. (quoting Pearson, 555 U.S. at 815-16). Second, the court must "decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." Id. (quoting Pearson, 555 U.S. at 816) (internal quotation marks omitted). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (quoting Pearson, 555 U.S. at 816) (internal quotation marks omitted). Qualified immunity is an affirmative defense and the burden of pleading it rests with the defendant. Gomez v. Toledo, 446 U.S. 635, 639 (1980).

Because the Court determined that there is no constitutional violation that gives rise to an Eighth Amendment claim under § 1983 against Defendants Princianni, Balicki, and Chiesa, the Court need not determine whether they are entitled to qualified immunity as to Plaintiff's Eighth Amendment claim.[6]

## III. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is

---

[6] The Court notes that Defendants do not argue that they are entitled to summary judgment as to Plaintiff's Fourteenth Amendment procedural due process claim. Critically, Defendants do not argue that SWSP's procedures for determining Plaintiff's maximum sentence satisfy the Fourteenth Amendment's procedural due process requirements. See Sample, 885 F.2d at 1115 (noting that "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision.") (emphasis added). Therefore, because Defendants do not assert that they are entitled to qualified immunity as to Plaintiff's Fourteenth Amendment procedural due process claim, the Court will not determine whether they are entitled to qualified immunity at this time. Should Defendants choose to move for summary judgment and assert that they are entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim in the future, the Court will then address whether Defendants are entitled to qualified immunity as to that claim.

**GRANTED** with respect to all claims against Defendant Chiesa.  In addition, the Court will **GRANT** the motion for summary judgment filed by Defendants Balicki and Princianni as to Plaintiff's Eighth Amendment claim.  Finally, the Court notes that because all Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim, the only claim remaining in this litigation is Plaintiff's Fourteenth Amendment due process claim against Defendants Balicki and Princianni.  An appropriate order shall issue today.


Date:  8/2/2011                                        /s/ Robert B. Kugler          
                                                                        ROBERT B. KUGLER
                                                                        United States District Judge